RAFAEL M. GONZALEZ, JR.
ACTING UNITED STATES ATTORNEY
RAYMOND E. PATRICCO, DISTRICT OF COLUMBIA STATE BAR NO. 454792
ASSISTANT UNITED STATES ATTORNEY
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-9375

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER BOHNENKAMP,<br><br>Defendant. | Case No. 1:16-cr-00215-BLW<br><br>**RULE 11 PLEA AGREEMENT** |

Rev. November 2015 (General)

## I. GUILTY PLEA

A. **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), the defendant, the attorney for the defendant, and the government[1] agree that the defendant will plead guilty to Count 21 and 22 of the Indictment, which charge the defendant with Wire Fraud Affecting a Financial Institution, in violation of 18 U.S.C. § 1343, and Bank Fraud, in violation of 18 U.S.C. § 1344, respectively.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this agreement. Upon acceptance of the defendant's guilty plea(s), and the defendant's full compliance with the other terms of this agreement, the government, will dismiss, under Federal Rule of Criminal Procedure 11(c)(1)(A), Counts 1 through 20, and Counts 23 through 26, of the Indictment, and, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the government will make certain recommendations contained in this agreement.

B. **Oath.** The defendant will be placed under oath at the plea hearing. The government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

## II. WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The defendant waives the following rights by pleading guilty pursuant to this agreement: 1) the right to plead not guilty to the offense(s) charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the defendant. If the court accepts the defendant's guilty plea, there will be no trial.

## III.   NATURE OF THE CHARGES

A.   **Elements of the Crime.** The elements of the crime of Wire Fraud Affecting a Financial Institution, in violation of 18 U.S.C. § 1343, as charged in Count 21, are as follows:

1. The defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2. The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3. The defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and

4. The defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

The elements of the crime of Bank Fraud, in violation of 18 U.S.C. § 1344, as charged in Count 22 are as follows:

1. The defendant knowingly executed a scheme to defraud a financial institution as to a material matter;

2. The defendant did so with the intent to defraud the financial institution; and

3. The financial institution was insured by the Federal Deposit Insurance Corporation.

B.   **Factual Basis.** If this matter were to proceed to trial, the government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

From 2009 through 2015, the defendant was the owner of Treasure Valley Marine, Inc. and Bohnenkamp's Whitewater Customs, Inc. (hereinafter "TVM/BWC") located in Meridian,

Idaho (and later Boise, Idaho). TVM/BWC sold and built custom-made jet boats and trailers. Generally, TVM/BWC required customers to pay upfront for their custom jet boats.

In or about 2014, in the District of Idaho, the defendant devised and intended to devise a scheme to obtain money and property from customers and material vendors of TVM/BWC by means of materially false and fraudulent pretenses, representations and promises, and to misappropriate without authority money and property belonging to customers and material vendors of his companies. Knowing that TVM/BWC was financially insolvent, from May of 2014 through December of 2014, the defendant continued to accept orders and upfront payments from 13 new customers and parts on credit from material vendors. At the time, he knew that the upfront payments from new customers would be used to pay old debts and complete the boats of existing customers, not to construct the boats of the new customers or pay for new parts. In doing so, the defendant acted with the intent to deceive the new customers and material vendors. The false representations and omissions that he made to new customers and material vendors were material. The 13 new customers did not receive the completed boats and trailers for which they paid.

On or about December 2, 2014, for the purpose of executing the scheme, the defendant caused a $125,728 check drawn on KeyBank on behalf of customer D.H. to be deposited in Washington Trust Bank, causing an interstate wire transfer of funds.

The defendant's scheme: (i) resulted in an actual loss of between $1,500,000 and $3,500,000; (ii) involved 10 or more victims; (iii) affected financial institutions, to wit: Washington Trust Bank, KeyBank, Idaho Central Credit Union, Mountain West Bank of Montana, and Les Bois Credit Union that loaned money to customers to purchase jet boats and trailers that were never built and delivered; and (iv) resulted in the defendant deriving more than $1,000,000 in gross receipts from the above financial institutions.

On or about January 6, 2012, in the District of Idaho, the defendant knowingly executed and attempted to execute a scheme to obtain moneys, funds, credits, asset, securities, and other property owned by, and under the custody or control of KeyBank. Specifically, the defendant caused to be submitted to KeyBank a false bill of sale for customer D.B. The defendant did so with the intent to defraud KeyBank. The bill of sale inflated the purchase price of the boat ordered by D.B., misrepresented that D.B. had made a $20,000 cash deposit, when he had not, and omitted that $59,283 of the loan proceeds would be kicked-back to D.B. The false representations and omission on the bill of sale submitted to KeyBank were material. As a result, KeyBank disbursed loan proceeds of $272,982 to TVM/BWC, of which TVM/BWC kicked-back $59,283 to D.B.

## IV. SENTENCING FACTORS

A. **Penalties.** A violation of Wire Fraud Affecting a Financial Institution, in violation of 18 U.S.C § 1343, as charged in Count 21, is punishable by:

    1. a term of imprisonment of 30 years;

    2. a term of supervised release of not more than 5 years;

    3. a maximum fine of $1,000,000, and a special assessment of $100.

A violation of Bank Fraud, in violation of 18 U.S.C § 1344, as charged in Count 22, is punishable by:

    1. a term of imprisonment of 30 years;

    2. a term of supervised release of not more than 5 years;

    3. a maximum fine of $1,000,000, and a special assessment of $100.

B. **Supervised Release.** The court may impose a period of supervised release. No agreement exists as to the length of supervised release.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime(s) to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

C.    **Fines and Costs.** The court may impose a fine. No agreement exists as to the amount of the fine. The court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

D.    **Special Assessment.** The defendant will pay the special assessment(s) before sentencing and will furnish a receipt at sentencing. Payment will be made to:

> The United States District Court, Clerk's Office
> Federal Building and United States Courthouse
> 550 West Fort Street, Fourth Floor
> Boise, Idaho 83724.

E.    **Restitution.** In addition to any forfeiture, fine, or costs imposed, the defendant agrees to pay restitution equal to the loss caused to any victim of the charged offense pursuant to any applicable statute. There is no agreement between the parties on the amount of restitution; the parties intend to litigate the amount at sentencing. The defendant agrees that all monetary penalties imposed by the court, including restitution, will be due immediately and subject to immediate enforcement by the government. The defendant agrees that any payment schedule or plan set by the court is merely a minimum schedule of payments and neither the only method, nor a limitation on the methods, available to the government to enforce the judgment, unless the court specifically states otherwise. The defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor in considering whether the defendant has accepted responsibility under the United States sentencing guidelines ("USSG") §3E1.1.

F.    **Forfeiture.** The defendant understands that the court will, upon acceptance of the defendant's guilty plea(s), enter a forfeiture order as part of the defendant's sentence. The

forfeiture order may include assets directly traceable to the offense(s), assets used in the commission of the offense(s), and substitute assets and/or a money judgment equal to the value of the property derived from, or involved in, the offense(s). The defendant agrees immediately to forfeit to the government the property set out in the forfeiture allegation(s) of the Indictment and all property and property interests that constitute proceeds obtained or retained as a result of the offense, including the following:

1.    Cash Proceeds.  All interest and proceeds traceable thereto as proceeds of the Wire Fraud and Bank Fraud offenses pleaded to, in an amount to be litigated by the parties and determined by the Court.

Pursuant to 21 U.S.C. § 853(p), the government will seek forfeiture of substitute assets, or "other properties," up to the value of the defendant's assets subject to forfeiture. The government will do so when the property subject to forfeiture cannot be forfeited for one or more of the following reasons:

        a.    the property cannot be located upon the exercise of due diligence;
        b.    the property has been transferred, sold to, or deposited with a third person;
        c.    the property has been placed beyond the jurisdiction of the court;
        d.    the property has been substantially diminished in value; and/or
        e.    the property has been commingled with other property that cannot be subdivided without difficulty.

"Other properties" includes property not otherwise forfeitable, pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982. Forfeiture of substitute assets shall not constitute an alteration in the defendant's sentence.

The defendant agrees that the forfeitures herein are separate from all other penalties, including monetary ones, and are also separate from restitution. The defendant agrees to consent to abandonment proceedings as to forfeitable property herein, and to the entry of orders of forfeiture for such property, including civil administrative forfeiture, civil judicial forfeiture, or

criminal forfeiture. Finally, the defendant agrees to waive the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding: (a) notice of the forfeiture in the charging instrument, (b) advice regarding the forfeiture at the change-of-plea hearing, (c) announcement of the forfeiture at sentencing, and (d) incorporation of the forfeiture in the judgment. If this agreement is withdrawn for any reason, the defendant waives the right to contest all civil and administrative forfeitures that began before the withdrawal.

The defendant agrees to assist fully in the forfeiture of the foregoing assets, and to take all steps necessary to pass clear title to the forfeited assets to the government. The defendant will thus, for example, execute all documents necessary to transfer such title, assist in bringing any assets located outside of the United States within the jurisdiction of the United States, take whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture, etc.

The defendant will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, related civil forfeiture case, or petition for remission or mitigation of forfeiture. Further, the defendant will testify truthfully in any such proceeding. The defendant agrees to waive all challenges, on any grounds, to any forfeiture carried out in accordance with this agreement.

The defendant agrees that the forfeiture provisions of this agreement will survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this Agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if defendant had survived, and that determination shall bind the defendant's heirs, successors and assigns until the agreed forfeiture is collected in full. This includes any agreed money judgment amount. If the crime(s) involved victims, then the defendant acknowledges and agrees that this agreement to disgorge the defendant's wrongfully-

obtained criminal proceeds for the benefit of the defendant's victims is remedial in nature.
Therefore, the defendant intends disgorgement to be completed regardless of any possible future
abatement of defendant's criminal conviction. The court shall retain jurisdiction to settle any
disputes arising from application of the foregoing forfeiture provisions.

## V.    UNITED STATES SENTENCING GUIDELINES

A.    **Application of Sentencing Guidelines.** The court must consider the USSG in
determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the court
may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The court is not a party to this agreement. The agreement does not bind the court's
determination of the USSG range. The court will identify the factors that will determine the
sentencing range under the USSG. While the court may take the defendant's cooperation, if any,
and the recommendations of the parties into account, the court has complete discretion to impose
any lawful sentence, including the maximum sentence possible.

Recognizing that the court is not bound by this agreement, the parties agree to the
recommendations and requests set forth below.

B.    **Sentencing Guidelines Recommendations and Requests.**

1.    **Government's statements at sentencing.** The government reserves the
right to fully allocute at sentencing regarding any sentencing recommendation and to rely on any
information in support of its recommendation regardless of whether the information is contained
in the plea agreement or the presentence report.

2.    **Acceptance of Responsibility.** If the defendant clearly accepts
responsibility for the offense, the defendant will be entitled to a reduction of two levels in the
combined adjusted offense level, under USSG § 3E1.1(a). The government will move for an
additional one-level reduction in the combined offense level under § 3E1.1(b) if the following

conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently. If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the government will withdraw or decline to make such a recommendation.

        3.    **Guidelines Calculations.** The parties agree that the following USSG calculations apply:

| | | | |
|---|---|---|---|
| a. | § 2B1.1(a)(1): Base Offense Level | | 7 |
| b. | § 2B1.1(b)(1)(I): More than $1,500,000 loss | | +16 |
| c. | § 2B1.1(b)(2)(A)(i): More than 10 victims | | +2 |
| d. | § 2B1.1(b)(16)(A): More than $1,000,000 gross receipts from financial institution | | +2 |
| e. | § 3E1.1(a): Acceptance of Responsibility | | -3 |
| f. | Adjusted Offense Level | | = 24 |

The parties also agree that the two-level enhancement for sophisticated means in § 2B1.1(b)(1)(C) does not apply.

        4.    **Downward Departure or Variance Request by defendant.** Unless otherwise specified in this paragraph, the defendant will not seek a downward departure or variance under 18 U.S.C. § 3553(a), without first notifying the Government of the defendant's intent to seek a downward departure and the defendant's reasons and basis therefor, such notice to be provided not less than 21 days before the date set for sentencing.

## VI.    WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

A.     **Waiver:** In exchange for this agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, including forfeiture and restitution.

The defendant acknowledges that this waiver shall result in the dismissal of any direct appeal or collateral attack the defendant might file seeking to challenge the plea, conviction or sentence in this case. Further, the filing of such an appeal or collateral attack will breach this agreement and will allow the government to withdraw from the agreement and take other remedial action.

If the defendant believes the government has not fulfilled its obligations under this agreement, the defendant will object at the time of sentencing; further objections are waived.

B.     **Exceptions:**

1.     **Direct Appeal:** Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal if one of the following unusual circumstances occurs:

      a.     the sentence imposed by the court exceeds the statutory maximum;

      b.     the court arrived at an advisory USSG range by applying an upward departure under chapter 5K of the USSG; or

      c.     the court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory USSG range as determined by the court.

The defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

2.     **Motion Under 28 U.S.C. § 2255:** Notwithstanding subparagraph A, the defendant shall retain the right to file a 28 U.S.C. § 2255 motion alleging ineffective assistance of counsel.

## VII.     PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States probation office for use in preparing a presentence report. Failure to execute releases and provide information for the presentence report violates this agreement and relieves the government of its obligations in this agreement. Such failure and response by the government will not, however, constitute grounds for withdrawing the plea of guilty unless the government so requests. Providing materially false information will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1.

## VIII.  DISCLOSING FINANCIAL INFORMATION

The defendant agrees to disclose all of the defendant's assets and sources of income to the government, including all assets over which the defendant exercises or exercised direct or indirect control, or in which the defendant has had any financial interest. The defendant also agrees to cooperate in obtaining any records relating to ownership of assets when sought by the government. The defendant agrees truthfully to complete a personal financial statement within fourteen days from the date the defendant signs this agreement. If the government provides a financial statement to be completed, the defendant agrees to complete the financial statement truthfully and accurately within fourteen days from the date the defendant signs this agreement or the date the financial statement is provided to the defendant or counsel, whichever is later. The defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k) within seven days of the event giving rise to the changed circumstances. The failure timely and accurately to complete, sign, and update the financial statements as required herein, may constitute failure to accept responsibility under USSG § 3E1.1, as well as other things.

The defendant authorizes the government: (a) to obtain a credit report on the defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain financial records related to the defendant.

Before sentencing, defendant agrees not to dissipate any assets without the consent of both the government's financial litigation unit and the asset forfeiture unit. If any assets are sold, any sale proceeds received from sale of assets will be deposited with the clerk and, upon sentencing, paid toward any monetary penalties due as ordered in the judgment.

## IX.     NO RIGHT TO WITHDRAW PLEA

The defendant understands that the court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this agreement or the guilty plea, regardless of the court's actions.

## X.     CONSEQUENCES OF VIOLATING AGREEMENT

A.     **Government's Options.** If the defendant fails to keep any promise in this agreement or commits a new crime, the government is relieved of any obligation: 1) to make a sentencing recommendation consistent with the terms promised in this agreement; and 2) not to prosecute the defendant on other charges, including charges not pursued due to this agreement. Such charges may be brought without prior notice. In addition, if the government determines after sentence is imposed that the defendant's breach of the agreement warrants further prosecution, the government may choose between letting the conviction(s) under this agreement stand or vacating such conviction(s) so that such charge(s) may be re-prosecuted. If the government determines that a breach warrants prosecution before sentencing, it may withdraw from the agreement in its entirety.

The government's election to pursue any of the above options cannot be a basis for the defendant to withdraw the guilty plea(s) made pursuant to this agreement.

B.   **Defendant's Waiver of Rights.**  If the defendant fails to keep any promise made in this agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this agreement.  In addition, for any charge that is brought as a result of the defendant's failure to keep this agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the defendant does not enter an acceptable plea, the government will move to continue the trial now set to allow the government adequate time to prepare.  The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## XI.   MISCELLANEOUS

A.   **No Other Terms.**  This agreement is the complete understanding between the parties, and no other promises have been made by the government to the defendant or to the attorney for the defendant.  This agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property.  Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does not bind or obligate governmental entities other than that specified as the government in this agreement (i.e., the United States Attorney's Office for the District of Idaho).  The government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the request of defendant' or counsel.

B.   **Plea Agreement Acceptance Deadline.**  This plea offer is explicitly conditioned on the defendant's notification of acceptance of this agreement no later than 5:00 p.m. on April 20, 2017.

C. **Risk of Removal from the United States.** The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however. While arguments may be made in such a proceeding, it is virtually certain that defendant will be removed from the United States. The defendant nevertheless affirms that the defendant wants to plead guilty.

## XII. UNITED STATES' APPROVAL

I have reviewed this matter and the agreement. This agreement constitutes a formal plea offer from the government. Any oral discussions with the defendant and defense counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

RAFAEL M. GONZALEZ, JR.
ACTING UNITED STATES ATTORNEY
By:

_____     4/20/17
RAYMOND E. PATRICCO                    Date
Assistant United States Attorney

## XIII. ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this agreement with my attorney. I understand the agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the government,

including any Assistant United States Attorney, concerning the plea to be entered in this case. I understand that this agreement constitutes a formal plea offer from the government. Any oral discussions between the government and me or my counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including enter a guilty plea. I understand that, if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is virtually certain that I will be removed from the United States. I am satisfied with my attorney's advice and representation in this case.

_____          4-20-17
CHRISTOPHER BOHNENKAMP                       Date
Defendant

    I have read this agreement and have discussed the contents of the agreement with my client. The agreement accurately sets forth the entirety of the agreement. I have conveyed all written offers from the government to the defendant pursuant to *Missouri v. Frye*, 132 S. Ct. 1399, 1408-09 (2012). I understand that this agreement constitutes a formal plea offer from the government. Any oral discussions between the government and me or my client about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. I have discussed with my client the fact that if my client is not a citizen or naturalized citizen of the United States, by pleading guilty in this case, it is virtually certain that my client will be removed from the United States. I concur in my client's decision to plead guilty as set forth above.

CHARLES PETERSON, JR.
Attorney for the defendant

4/20/17

Date