UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER BOHNENKAMP,<br><br>Defendant. | Case No. 1:16-cr-00215-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is the motion for judicial recommendation for twelve months of community correctional facility placement filed by Defendant, Christopher Bohnenkamp. (Dkt. 102.) For the reasons discussed below, the Court denies the motion.

## BACKGROUND

Bohnenkamp is 46 years old and has a General Educational Development (GED) degree. He is married to Rachel Bohnenkamp, and has two children with her, who are approximately 7 years old and 9 years old. He also has three children from a previous marriage, two of whom are adults and the other is approximately 16 years old. Prior to the offenses at issue in this case, Bohnenkamp had no

criminal history.

In September 2016, Bohnenkamp was indicted in a 27-count indictment charging him with wire fraud and bank fraud. In August 2017, he pleaded guilty to one count of wire fraud and one count of bank fraud pursuant to a plea agreement.

On August 8, 2016, the Court sentenced Bohnenkamp to 63 months of imprisonment, which was at the high end of the sentencing range, followed by 5 years of supervised release. (Dkt. 58.) The Court also ordered Bohnenkamp to pay $2,491,253 in restitution. (Dkt. 75.)

Since surrendering to the Bureau of Prisons, Bohnenkamp has been housed at FCI McKean, a medium-security federal correctional institution with an adjacent minimum-security satellite camp, in Pennsylvania. His current release date is March 9, 2021.[1] This release date reflects the receipt of good time credit. If released as currently scheduled, Bohnenkamp will have served approximately 54 months of his 63-month sentence.

On September 9, 2019, Bohnenkamp filed a motion for judicial

---

[1] Mr. Bohnenkamp represents that his projected release date is April 14, 2021. (Dkt. 102 at 4.) However, the BOP website states a projected release date of March 9, 2021. *See* https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results. March 9, 2021, is also represented by the Government as Bohnenkamp's release date, and that this expected release date reflects application of good time credit.

**MEMORANDUM DECISION AND ORDER - 2**

recommendation for twelve months of community correctional facility placement pursuant to the Second Chance Act of 2007. (Dkt. 102.) The Court directed the Government to respond to the motion. (Dkt. 103.) On March 6, 2020, the Government filed its response opposing Bohnenkamp's motion. (Dkt. 105.) The Government also represents in its opposition that the United States Probation Office supports the Government's position. (*Id.*)

## LEGAL STANDARD

Congress made the Bureau of Prisons (BOP) responsible for determining where to place federal inmates after entry of judgment. 18 U.S.C. §32621(b). Nonetheless, the BOP may consider (among other things) a statement of the sentencing court "recommending a type of penal or correction facility as appropriate." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011); *see* 18 U.S.C. § 3624. A sentencing court's recommendation is not binding. 18 U.S.C. § 3621(b); *see Ceballos*, 671 F.3d at 856 ("a district court's recommendation to the [BOP] is just that—a recommendation"). Moreover, district courts have "the authority to make (or not make) non-binding recommendations to the [BOP] at any time—including but not limited to—during the sentencing colloquy." *Ceballos*, 671 F.3d at 856 n.2.

The Second Chance Act allows the BOP to consider placing inmates nearing the end of their sentences "under conditions that will afford that prisoner a

reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C.A. § 3624(c)(1). The Second Chance Act does not, however, require that the BOP place a particular inmate in a residential reentry center or home confinement.

The purpose of the Second Chance Act is to "strengthen overall efforts to reduce recidivism, increase public safety, and help States and communities to better address the growing population of ex-offenders returning to their communities." H.R. REP. 110-140, H.R. Rep. No. 140, 110TH Cong., 1ST Sess. 2007, 2007 WL 1378789, at *5, 2008 U.S.C.C.A.N. 24 (Leg. Hist.). "The bill focuses on development and support of programs that provide alternatives to incarceration, expand the availability of substance abuse treatment, strengthen families, and expand comprehensive re-entry services." *Id.*

## ANALYSIS

Bohnenkamp requests a recommendation from the Court for the BOP to grant him participation in the Second Chance Act to allow him to be placed in a halfway house for the 12 months prior to his release date. (Dkt. 102.) Bohnenkamp represents that he has completed the residential portion of RDAP (Residential Drug Abuse Program); has maintained a spotless disciplinary record, completed numerous education courses, tutored and presented classes to other inmates (such

as Resume Writing, Ultimate Job Search, Parenting Class); has served as a Big Brother to 12 inmates in the RDAP Program; has served the prison in several jobs (Education, Unit Orderly, Psychology Facilitator, and Camp Reentry Clerk); has helped with preparation of meals during lockdown at his institution of confinement, FCI McKean Medium Security Prison; and has served as an orderly in the Christian Church services at his institution. Bohnenkamp also represents that he has secured employment with Garco Building Systems, and that he can begin employment immediately upon his release. Bohnenkamp argues that an earlier release to a halfway house would allow him to support his family; have more contact with his family, including his children; and start making payments towards the more than $2 million restitution due in this matter.

    The Court commends Bohnenkamp on his model behavior in prison, his completion of RDAP and education courses, his tutoring and support of other inmates, and his work in various jobs at his institution. However, after reviewing the arguments of the parties and the record in this case, including the presentence report, the Court finds that Bohnenkamp is not the type of high-risk inmate that the Second Chance Act is meant to help and will accordingly deny the motion for a recommendation.

    First, there appears to be a low risk or recidivism here. Prior to his

conviction in this case, Bohnenkamp had no criminal history. Further, his crimes in the present case were motivated by greed and the desire for a life of luxury and not due to an inability to support his family. Having been punished for his crimes, he is unlikely to commit another crime or otherwise be a threat to society. Thus, the primary purpose underlying the Second Chance Act—reducing the rate of recidivism in high risk ex-offenders—is not implicated here.

Second, Bohnenkamp is not in need of most of the re-entry services offered under the Second Chance Act. As previously found by the Court, Bohnenkamp has a low risk of future substance abuse. Although he self-reported alcoholism and completed RDAP, he never sought treatment prior to entering prison. There is no indication that he is in need of substance abuse treatment, let alone that such a need warrants early release.

Bohnenkamp is also not in need of vocational training. Prior to incarceration, Bohnenkamp had worked his way up to manager at Les Schwab and was earning $250,000 a year. He then owned and operated two jet boat retailers, and was an employee of Niagara Jet Adventures. Bohnenkamp thus has significant job skills, including managerial and business experience. He also reports that he has a job waiting for him upon his release. Early release is thus not needed for him to develop job skills or to find a position in the workforce.

Early release is also not warranted to strengthen an unstable, financially-strapped family. Bohnenkamp's wife and two adult children were collectively earning $10,000 per month and are capable of supporting Bohnenkamp's three younger children, ages 16, 9, and 7. His ex-wife is also a potential source of support for his 16-year-old child.

As to restitution, while the Court appreciates Bohnenkamp's wish to begin paying restitution, the Court does not find that this warrants early release.

Finally, the Court notes that Bohnenkamp's model behavior has already earned him good time credit and, as a result, it is anticipated that he will only serve 54 months of his 63-month sentence.

The Court finds, under the circumstances, that a judicial recommendation for twelve months of community correctional facility placement under the Second Chance Act is not warranted.

## ORDER

**IT IS ORDERED that** Defendant Christopher Bohnenkamp's motion for judicial recommendation for twelve months of community correctional facility placement (Dkt. 102) is **DENIED.**



DATED: December 3, 2020

_____
B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 8**